Clifford CONNER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–85–109–CR, 3–85–111–CR.

Court of Appeals of Texas,
Austin.

June 11, 1986.

Steve Gibbins, Austin, for appellant.

Ronald Earle, Dist. Atty., Ashton Cumberbatch, Asst. Dist. Atty., Austin, for appellee. ·

Before SHANNON, C.J., and SMITH and GAMMAGE, JJ.

PER CURIAM.

Appellant pleaded guilty in our cause number 3–85–109–CR to the offense of possession of cocaine, Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.04(b) (Supp.1986) and was sentenced, in accordance with the terms of a plea bargain, to fifteen years imprisonment. In our cause number 3–85–111–CR, appellant pleaded nolo contendere to the offense of possession of methamphetamine, Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.04(b) (Supp.1986), and was sentenced, again in accordance with a plea bargain, to serve a fifteen-year term to run concurrently with the first sentence.

In both causes, appellant contends the trial court erred by overruling his pretrial motions to suppress the controlled substances. We agree, and will reverse both judgments of conviction.

### No. 3–85–109–CR

On November 27, 1984, Austin police officers went to the residence of Greg Benson to execute a warrant authorizing the search of the residence and the arrest of Benson. When the police arrived, appellant, who was walking out the front door of the house, ran back into the house and slammed the door. The police announced themselves and kicked down the door. Once inside, the police found appellant and a woman sitting on a couch. According to police testimony, neither appellant nor his companion displayed weapons nor attempted to escape or resist the officers, and each complied when asked to raise his hands. The police then searched appellant. The search turned up no weapons but rather three small bags of what was later determined to be cocaine.

There was also testimony that at the time the police entered the house, they heard a rear door slam. Apparently, this was Greg Benson, as he was apprehended shortly thereafter while attempting to escape down an alley.

It was well-established in Texas, prior to the decision of the Supreme Court in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), that an officer executing a valid search warrant had the right to search all persons found on the premises during the execution of the warrant. *Hernandez v. State*, 437 S.W.2d 831 (Tex.Cr. App.1968); *Johnson v. State*, 440 S.W.2d 308 (Tex.Cr.App.1969); *Guzman v. State*, 461 S.W.2d 602 (Tex.Cr.App.1970); *Fisher v. State*, 493 S.W.2d 841 (Tex.Cr.App.1973); *Guerra v. State*, 496 S.W.2d 92 (Tex.Cr. App.1973); *Brown v. State*, 498 S.W.2d 343 (Tex.Cr.App.1973); *Martinez v. State*, 504 S.W.2d 897 (Tex.Cr.App.1974); *Rice v. State*, 548 S.W.2d 725 (Tex.Cr.App.1977). However, these decisions were expressly overruled by the Court of Criminal Appeals in *Lippert v. State*, 664 S.W.2d 712 (Tex. Cr.App.1984). After a thorough discussion of *Ybarra* and decisions from other jurisdictions, the *Lippert* opinion articulates the following principles: (1) a warrant to search a premises and to arrest and search specified individuals does not carry with it the right to detain, search, or frisk persons found on the premises but not directly associated with the premises and not named or specifically described in the warrant; (2) to justify the detention and search of a person, other than an occupant, present at the scene of a valid execution of a search warrant, there must be some independent factors, other than mere presence, tying the person to the unlawful activities on the premises; (3) a frisk of a person merely present at the scene must be justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *i.e.*, the police must have a reasonable belief that the person may be armed and presently dangerous.

The State does not seek to justify the search of appellant as the culmination of a valid *Terry* frisk. Moreover, it is undisput-

ed that appellant was not named or described in the warrant, was not a resident or occupant of the Benson house, and was unknown to the police before the day in question. Nevertheless, the State seeks to avoid the effect of *Lippert* by arguing that appellant was not "merely present," but, rather, his behavior was sufficient to connect him to the unlawful activities the police had probable cause to believe were occurring in the Benson house. The State points to the fact that when he saw the police approaching the house, appellant promptly went inside and slammed the door. The State characterizes this behavior as "flight." The State also notes that the officers heard a rear door slam as they entered the house, from which it infers that appellant warned Benson, who was arrested nearby, of the approach of the police. The State concludes that this conduct "cannot be characterized as being consistent with innocent activity." We cannot agree.

 The record reflects that seven officers were involved in the execution of the search warrant at the Benson house. The officers were wearing protective vests and jackets clearly identifying themselves as police officers. We do not believe that only a person engaged in criminal activity would be startled by the sight of seven, presumably armed, police officers approaching a house as he stepped outside. Nor do we find it necessarily indicative of criminal behavior that such a person would advise the others present in the house of the approach of the police. Finally, if, as the State argues, appellant attempted to flee from the police, he did so in a singularly unusual way: by sitting on the couch in the living room. In short, we find the evidence cited by the State insufficient to tie appellant to the unlawful activities allegedly taking place in the Benson house.

 Alternatively, the State argues that the police had probable cause to arrest appellant for violating Tex.Pen.Code Ann. § 38.05(a)(3) (1974), which provides that a person commits an offense if, with intent to hinder the arrest of another for an offense, he warns the other of impending discovery or apprehension. Again, we cannot agree. Because appellant was searched and arrested before Benson was discovered running down the alley, it cannot be said the police had probable cause at that point to arrest appellant for aiding Benson's escape. Moreover, even if it is assumed that the slamming door heard by the police as they entered was caused by Benson seeking to escape, and even if it is further assumed that Benson fled after being informed by appellant that police officers were outside the house, appellant's actions were as indicative of innocent conduct as of criminal conduct. Just as a person's mere propinquity to another independently suspected of criminal activity does not, without more, give rise to probable cause to search that person, *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), neither does the mere fact that a person informs another independently suspected of criminal activity of the approach of a police officer, without more, give rise to probable cause to arrest that person for hindering arrest.

We hold the trial court erred in overruling appellant's motion to suppress evidence of the cocaine. The judgment of conviction in number 3–85–109–CR must be reversed.

### No. 3–85–111–CR

On December 11, 1984, Austin police officer James Wolsch, who had arrested appellant during the raid at the Benson house, received a tip from an unnamed informer that the informer "had just seen" appellant selling Dilaudid in the 1800 block of East 12th Street. Acting on this information and without a warrant, Wolsch and another plainclothes police officer drove to the 1800 block of East 12th Street where, at 3:30 in the afternoon, they found appellant standing alone. The officers alighted from their vehicle, approached and detained appellant, and proceeded to frisk him, finding a small pistol in his jacket pocket. Appellant was then led to the police car where he was searched a second time. After being transported to the police station, appellant was searched a third time and it was then that

the methamphetamine was discovered in his pocket.

The State contends appellant's arrest arose from a legitimate "stop and frisk" under *Terry v. Ohio, supra.* In support of this contention, the State points out that the police were in possession of a confidential informer's tip that appellant was selling drugs, and that one of the officers had arrested appellant for possession of cocaine at the Benson residence only ten days earlier. The State also cites testimony that the 1800 block of East 12th Street is a hub of drug activity, that the officers feared for their personal safety because there had been recent shootings in the area, and that appellant was known to associate with Greg Benson who "always had a gun." Finally, when the police approached appellant, he began to walk in the opposite direction, causing one of the officers to conclude that appellant was about to run and that prompt action was required.

█ A police officer may detain a person for investigatory purposes if, based on the totality of the circumstances, the officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Texas cases express this concept as follows:

> In order to justify the intrusion, the law enforcement officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. Detention based on a hunch is illegal. [Citation omitted.] There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. Where the events are as consistent with innocent activity as with criminal activity, a

detention based on those events is unlawful. [Citation omitted.]

*Johnson v. State,* 658 S.W.2d 623, 626 (Tex. Cr.App.1983). If the officer has a reasonable belief that the person detained may be armed and dangerous, he may frisk the detainee for weapons. *Terry v. Ohio, supra.*

The events leading to appellant's detention and frisk began with a tip from an informer who claimed he had seen appellant selling contraband. However, Wolsch did not testify he had previously received reliable information from this informer, nor is there any other indication in the record that the informer was known to be reliable. Further, the informer's tip was not replete with detail, the corroboration of which might have reasonably justified a belief in its accuracy. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Whaley v. State,* 686 S.W.2d 950 (Tex.Cr.App.1985). The only detail contained in the tip—that appellant was standing in the 1800 block of East 12th Street—was apparent to any passer-by, and the corroboration of this fact by the police added little to the informer's credibility.

Once the officers arrived at the scene and confirmed appellant's presence, they did not, by their own admission, observe appellant commit any act suggestive of criminality. Although appellant did turn and walk away as the officers approached him, he had a perfect right to do so and we understand the State to cite this fact only to justify prompt action by the police.

█ The only other facts cited by the State to justify the detention are the officers' knowledge of appellant's earlier arrest for possession of cocaine and his association with a person known to carry weapons, and the bad reputation of the neighborhood. However, a police officer may not stop for investigation any person he knows to have once been engaged in criminal activities or anyone who associates with such a person. *Hernandez v. State,* 523 S.W.2d 410 (Tex.Cr.App.1975). Nor are we

aware of any authority for the proposition that a person found in a high-crime area has a lesser right than others to be free from forcible detention by the police. Such an encroachment on freedom is allowed only where the totality of the circumstances justifies a reasonable suspicion of wrongdoing. *Id.*

We hold that the facts known to the police in this case, together with the inferences from those facts, did not give them a particularized and objective basis for suspecting appellant of criminal activity. Therefore, the officers did not have a reasonable basis for detaining appellant and, because the right to frisk depends on the reasonableness of the forcible detention, *see Terry v. Ohio, supra* 392 U.S. at 33, 88 S.Ct. at 1886 (Harlan, J., concurring), it follows that the frisk of appellant was unlawful.

The trial court erred in overruling appellant's motion to suppress the methamphetamine. The judgment of conviction in number 3–85–111–CR must be reversed.

The judgments of conviction are reversed and the causes remanded to the trial court.